## FENNER *against* LEWIS.

Husband and      THIS was an action of *covenant*. The cause was tried at the
wife, by arti-
cles of agree-  *New-York sittings*, in *June*, 1812, before the *Chief Justice*.
ment, cove-     The cause came up on a *bill of exceptions*, taken at the trial.
nanted to live
separate, and   The facts contained in the bill of exceptions, which are material
C. executed
the agreement   to be stated, were as follows: The plaintiff gave in evidence
as trustee and
surety for the  *articles of agreement*, made the 22d of *November*, 1806, between
wife, and co-   the plaintiff, of the first part, *Dorothy*, the wife of the plaintiff, of
venanted to
pay to the      the second part, and the defendant, of the third part; reciting,
husband a
certain sum of  that whereas the plaintiff, and *Dorothy*, his wife, had agreed
money, on his
delivering to   to live separate, and the defendant had agreed to be bound for
the wife, for   the performance of the terms on the part of the said *Dorothy*,
her separate
use, a coachee  &c. The plaintiff covenanted with the defendant to permit the
and horses,
&c.
    In an action of covenant brought by the husband against C. to recover the money, it was held
that evidence of the declarations and confessions of the wife, as to the delivery of the coachee and
horses, was admissible.
    *It seems*, that where a husband permits his wife to act in any particular business, he is bound by
her acts and admissions, which may be given in evidence against him.
    Where a party asks a witness as to what another person confessed, the whole of the confession
or declaration, as stated by the witness, is evidence, and must be taken together.

said *Dorothy* to live separate and apart from him, &c.   And in consideration of the premises, the defendant covenanted, on the part of the wife, to pay the plaintiff " 3,800 dollars, the plaintiff delivering to the said *Dorothy*, for her separate use, the coachee and horses which he has lately purchased;" and further, that the said *Dorothy* shall suffer the plaintiff to live separate from her, &c. and for the punctual performance of the agreement, the plaintiff and defendant bound themselves to each other, in the penal sum of 25,000 dollars.

The plaintiff offered *Robert Jackson*, as a witness, to prove certain declarations and confessions of *Dorothy*, the wife of the plaintiff, relative to her acceptance of the coachee and horses, and which declarations were made in the presence of the defendant.   The evidence was objected to by the defendant's counsel, and the objection was overruled by the judge; and his opinion excepted to by the defendant's counsel.   The witness being admitted, testified, that he had let a stable to the plaintiff, before the separation of the plaintiff and his wife, in which the coachee and horses were kept.   After the separation, in the fall of 1806, the plaintiff removed to *Poughkeepsie*, and the witness called on the wife for the rent of the stable, and she told the witness that she had the coachee in the stable and used it, but not the horses; that she had sent them to the plaintiff, at *Poughkeepsie*, to be kept during the winter.   The witness requested her to give up the stable, but she refused, saying she should want it for the horses in the spring.   She afterwards took away the coachee.

The defendant produced as a witness, a coachman who lived with the plaintiff, who testified, that he took the horses to *Poughkeepsie*, by order of the plaintiff, in the autumn of 1806; and that early in the next spring, he brought the horses to *New-York*, by direction of the plaintiff, who sold them; and that the witness was never spoken to by Mrs. *Fenner* relative to the horses.

*John Robertson*, witness for the defendant, testified, that he saw the horses in the spring of 1807, in *New-York*; and being questioned by the defendant, whether the plaintiff had not acknowledged that he wanted to sell them, the witness answered, that the plaintiff told him " that he wanted to sell the horses, for he had offered them to Mrs. *Fenner*, and she would not receive them, and he must do something with them."   The defendant's counsel objected to any evidence of the declarations of the plaintiff, in the absence of the defendant; but the *Chief Justice* ruled

that the evidence was admissible, as coming from the defendant's own witness, on his direct examination, and being part of the conversation about which the defendant inquired. To this opinion the defendant's counsel excepted. The defendant then offered a witness to prove the declarations of the defendant, at different times, in the winter of 1806, but the evidence was objected to by the plaintiff's counsel, and overruled by the *Chief Justice.*

The plaintiff produced two other witnesses to prove the acknowledgments of Mrs. *Fenner,* in presence of the plaintiff, one of whom testified, that being present at the house of Mrs. *Fenner,* in the spring of 1807, the plaintiff came there and told her he had brought down the horses in good order; and she said it was no time to talk about them.

This evidence was objected to but admitted, and an exception taken.

The *Chief Justice* charged the jury, that the delivery of the coachee to Mrs. *Fenner* was admitted, and that the testimony given by three witnesses of the admission of Mrs. *Fenner,* that she had sent the horses to *Poughkeepsie,* was sufficient evidence of the fact of her having received the horses in the fall of 1806, after the separation; and that the defendant having covenanted to pay the plaintiff 3,800 dollars, on his delivering the coachee and horses to his wife, the plaintiff was entitled to recover, and the jury accordingly found a verdict for the plaintiff.

*Hoffman,* for the defendant. The principal question is, whether the evidence given of the acknowledgment or declarations of Mrs. *Fenner,* as to the delivery, or a tender and refusal of the horses, was admissible. The defendant stands as a mere surety or guarantee to the contract. In regard to him, therefore, the construction ought to be strict. Mrs. *Fenner* was incapable of contracting, and her acts or declarations amount to nothing. The real parties to the contract are the plaintiff and defendant. Shall the mere declarations of a third person, not under oath, be received as evidence of a fact, essential to be fully proved, in order to support the action against the defendant? It is an attempt to substitute the declarations of Mrs. *Fenner* as proof of her acts. The delivery of the coachee and horses was a strict condition precedent, and its performance ought to be strictly proved.

Again, the declaration of a principal, in such a case, ought not to be admitted to charge the surety. The plaintiff, by this slight

evidence of a *waiver*,* on the part of his wife, gets rid of the performance of the covenant on his part, so as to charge the defendant with the payment of this large sum of money. The mere *ex parte* declarations of Mrs. *Fenner* ought not to be received to charge the defendant.

Again, a husband and wife cannot, in any case, be witnesses for or against each other.† If her evidence, as a witness, cannot be received under oath, *à fortiori*, evidence of her *ex parte* declarations cannot be admissible.

Next, as to the testimony of *Robinson*. We admit, that a direct answer to a question put must be evidence; but where a witness, in his answer, states matters disconnected with the question put to him, it ought not, as to those matters, to be received as evidence.

*Slosson* and *D. B. Ogden*, contra. To determine whether testimony is admissible, not only the pleadings in the cause, but all the attending circumstances, as they stood at the time, must be taken into consideration. Evidence which may be proper, at one time, under certain circumstances, may not be so at another time, and under a different state of things.

As to the contract, or articles of agreement, and every object of it, Mrs. *Fenner* is to be regarded as a *feme sole*. She was to receive the coachee and horses; they were to be for her use and benefit; she was, therefore, the only person interested in the delivery of them. Her admissions are not in fraud of any person, but against her own interest. The *Chief Justice* qualified his opinion as to the admissibility of the evidence, provided there should be no fraud or collusion between Mrs. *Fenner* and the plaintiff. But no such fraud or collusion was pretended. Again, by the agreement of the defendant, Mrs. *Fenner* is constituted the person to receive the horses; and he thereby consents that her acts and declarations, as to that matter, shall be evidence. Where a party agrees on a third person, to do an act, or refers another to that third person, for information as to any fact, he is bound by the acts or declarations of such third person, as much as if done or said by himself.‡

Suppose the plaintiff had delivered the horses to Mrs. *Fenner*, and had taken her receipt for them, would not that receipt have been evidence against the defendant? And where is the difference between a receipt and her verbal admission of the delivery?

ALBANY, Jan. 1813.

FENNER
v.
LEWIS.

* *Ludlow* v. *Simond*, 2 *Caines' Cas. in Error*, 1. † *Davis* v. *Dinwoody*, 4 *Term Rep.* 678. 2 *Campb.* 200—202. n. 1 *Stra.* 405.

‡ 1 *Campb. N. P.* 364.

ALBANY,
Jan. 1813.

FENNER
v.
LEWIS.

* Cases temp.
Hardw. 264.
† Bl. Com.
443 See Bull.
N. P. 285.

‡ 4 Term Rep.
678. See al-
so 2 Term
Rep. 263.

§ 1 Stra. 504.

¶ 1 Stra. 527.
** 1 Esp.
Rep. 142.

But it is said Mrs. *Fenner* was a *feme covert,* and she cannot, in any case, be a witness for or against her husband. The rule on this subject is a rule of policy, and the true reason of it is stated by Lord *Hardwicke,* in *Baker* v. *Dixie,** that it may preserve the peace of families. The reason assigned by *Blackstone*† that they are excluded from being witnesses, on account of the supposed *union of person,* so that if admitted, it would contradict the maxim, that no person can be a witness in his own cause, or is bound to accuse himself, is extremely artificial and unsatisfactory. In *Davis* v. *Dinwoody,*‡ it was put solely on the ground of interest; and the counsel for the plaintiff said, if there was no interest, it was not against the legal policy of marriage to admit the husband or wife as witnesses. In *Williams* v. *Johnson,*§ a wife was admitted to prove that goods had been delivered on the *credit* of her husband; and *Pratt,* Ch. J. allowed the declarations of a wife, as to what she had agreed to pay for nursing a child, as good evidence to charge the husband.¶ In *Emerson* v. *Blanden,*** Lord *Kenyon* stated the rule of law to be, that where a wife acts for her husband, in any business, by his consent, he thereby adopts her acts, and must be bound by any admission or acknowledgment made by her, respecting that business. The decisions cited by the other side go no further than to show that, where the husband and wife live together, they cannot be witnesses for or against each other. The reason of the rule does not apply to the case of husband and wife, living separate from each other by consent.

But the objection does not apply to the present case. The wife was not offered as a witness for or against her husband. The plaintiff and defendant had agreed that she should do a certain act, and her declarations were offered merely to show that she had done what the parties had agreed she should perform. She stands precisely in the same situation as any other agent would do, and her declarations must have the same effect as if made by any other third person appointed to receive the horses.

It is said the defendant is a surety; but as Mrs. *Fenner* could make no contract, she could not be the principal. If two covenant that one of them shall confer a benefit on a third person, that third person is not the principal; but the person who makes the covenant.

The case of *Ludlow* v. *Simond* is inapplicable. The plaintiff did not offer to show a waiver, but a strict performance of the

covenant on his part; an actual delivery, or what was tantamount to such delivery.

As to *Robinson's* testimony, the defendant, having put the question to the witness, must take the whole of his answer. He cannot take what makes for him, and reject what is against him.

*T. A. Emmet,* (Attorney-General,) in reply, observed, that Mrs. *Fenner* could not be considered as an *agent* of the defendant, since he could not do the act which was to be performed by her. The cases stated, as to what a wife may do as agent for her husband, are not, therefore, applicable to this case, and do not answer the objection.

All the law cases decided by Lord *Mansfield,* as to what may be done by married women living separate, by agreement, from their husbands, have been overruled, and the former general rule is restored to the fullest extent. Mrs. *Fenner,* notwithstanding the deed of separation, therefore, stands before the court as a married woman, and subject to all the rules of law, to the fullest extent, as to the rights of married persons.

[KENT, Ch. J. In the case of *Baker* v. *Barney,*[*] this court recognised a state of separation, by agreement, between husband and wife, and held that the husband, having allowed and paid a separate maintenance to his wife, was not answerable even for necessaries furnished to her, during such separation. And we took the law from the time of Lord *Holt.*]

[*] 8 Johns. Rep. 72.

*Espinasse,* in his *Digest,*[†] doubts the law as laid down in the *anonymous* case, reported in *Strange;* and in the case of *Kerslake* v. *Shepherd,* cited by him from MSS., *Nares,* J. rejected the evidence of the acknowledgment of the wife, in a similar case. And in *Hall* v. *Hill,*[‡] in an action for wages earned by the wife, Chief Justice *Lee* would not admit the acknowledgment of the wife, as to a receipt for a certain sum, to be given in evidence against her husband.

[†] Esp. Dig. 722.

[‡] Stra. 1094. 6 Term Rep. 680. And see Peake's Law of Evid. 182, 183. (174, 175.) and note.

If the wife could not be admitted as a witness in this cause, on oath, surely her declaration out of court, made to a third person, ought not to be evidence. In some of the cases which have been cited it is said, that the declarations of the wife may be evidence, under certain circumstances, against her husband; but here her declarations were offered in favour of her husband.

The defendant is not only a guarantee or surety, but he is also without any remedy against the person for whom he stands surety. This is a peculiar reason why the plaintiff ought to be held to strict proof, and to the strict rules of law.

*Per Curiam.* The principal point in this case is, whether the declarations of Mrs. *Fenner*, relative to the delivery of the horses, were competent evidence. By the articles containing the covenant on which the suit is brought, the plaintiff and his wife agreed to a separation, and the defendant became a party to the agreement as her trustee. Provision was made for her maintenance and enjoyment of separate property. She was to live, thereafter, as a *feme sole*, and was to receive from the plaintiff, " for her separate use, the coachee and horses which he had lately purchased." Both parties, by the covenant, concurred in her capacity to receive these articles, and she became, for that purpose, their mutual agent. Her declaration or confession that the act was done, became legal evidence of that fact, as a necessary consequence of her authority, under the articles, to receive the coachee and horses ; for no principle would seem to be more clear than that the person to whom performance of an act is agreed to be made, is competent to acknowledge such performance. If she was competent to receive, she was competent to give a receipt for them, and if her receipt would have been good evidence of the delivery, her parol admission must be equally so. The marriage union had, by the articles of separation, essentially ceased, and the law would so far recognise such a separation, as not to hold the husband any longer liable for her support. (*Baker* v. *Barney*, 8 *Johns. Rep*. 72.) The policy of the rule excluding the husband and wife from being witnesses for or against each other, is founded, according to one opinion, (Lord *Kenyon* in 3 *Term Rep*. 678.) on the supposed bias arising from the marriage ; and, according to another opinion, (Lord *Hardwicke* in *Baker* v. *Dixie, Cases temp. Hardw.* 252.) on the necessity of preserving the peace of families. Neither of these reasons for the rule any longer applied here ; and though the rule may still exist in the case to some purposes, it ought very readily to be made to yield to those cases which are exceptions to its application. Thus a wife's declaration of what she agreed to give a nurse, was received as good evidence to charge the husband, because she was his agent in hiring the nurse. (*Anon. Stra.* 527.) So where the husband permits her to act for him in any

particular business, he adopts and is bound by her acts and admissions, and they may be given in evidence against him. (*Emerson* v. *Blanden,* 1 *Esp. Rep.* 142.) The defendant here agreed to be bound by her act in receiving the horses; and, of course, he is bound by her admission of the act, and the plaintiff has as good a right to avail himself of her confession as he would have of her receipt. If her act or admission be good in one case, to charge the husband in favour of a third person, because she was his agent, the rule ought equally to apply in favour of the husband, when he and a third person, by the contract between them, have mutually referred to an act in which she was to be a party.

The disposal of this point goes, in a great degree, to put an end to all the questions raised in the bill of exceptions, as they principally depend upon it. There was another point, however, on which some reliance seemed to be placed by the counsel, though we cannot perceive any force in it. This was respecting the answer given by *John Robinson,* a witness on the part of the defendant, to a question put to him on the part of the defendant, as to a confession of the plaintiff. There is no principle in the law of evidence better settled, than that, if you will examine as to the confession of a party, you must take the whole confession together. You cannot take part and reject part.

Judgment for the plaintiff,